UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Homesite Insurance Company as subrogee of Traci Marx and Raymond Marx,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Norcold, Inc.; Norcold, LLC; Thetford Corporation; Thetford, LLC; Camping World of Henderson; Camping World, Inc.; and CWI, Inc.,<br><br>　　　　　Defendants.<br><br>And related consolidated claims. | Case No. 2:21-cv-02167-RFB-DJA<br><br>**Order** |

　　　　This is a products liability case arising out of a refrigerator fire that burned a recreational vehicle owned by Plaintiffs Traci and Raymond Marx and partially damaged a home owned by the Marxes in which their friends, Plaintiffs Alyssa and Seth Dillard, were living. Homesite Insurance Company insured the RV and sued Norcold, Inc. and Thetford Corporation[1]—the makers of the refrigerator—along with Camping World of Henderson and Camping World, Inc.[2]—which had sold the RV to the Marxes—for damages in state court. In a separate action, Plaintiffs Traci and Raymond Marx and Alyssa and Seth Dillard sued Norcold, Inc.; Thetford Corporation; the Dyson-Kissner-Moran Corporation ("DKM"); Camping World Holdings, Inc.; Camping World, Inc.; CWI, Inc.; and Camping World of Henderson. The Court consolidated the two actions into this action.

---

[1] The Court refers to Norcold and Thetford collectively as the "Norcold Defendants." Additionally, Norcold, Inc. and Thetford Corporation have since converted to limited liability companies and have been substituted as parties in this action.

[2] The Court refers to Camping World of Henderson; Camping World, Inc.; Camping World Holdings, Inc.; and CWI, Inc. collectively as the "Camping World Defendants."

Homesite moves to amend its complaint to add DKM as a defendant, asserting that DKM—which previously owned Norcold and Thetford—was involved in the manufacture of the refrigerator and thus, should be a party to the action. (ECF No. 68). Homesite also jointly moves for a protective order together with the Marxes and Dillards, arguing that, despite the parties' attempts, they have been unable to agree on the terms of a protective order to govern discovery exchanges. (ECF No. 69). The Norcold Defendants move to quash and for a protective order, arguing that a subpoena that Plaintiffs noticed to depose the Norcold Defendants' Chairman/President and Director is an improper apex deposition. (ECF Nos. 80, 81).

Because the Court does not find that Homesite's proposed amendment would be futile, it grants the motion to amend. (ECF No. 68). Because the Court finds that certain of Homesite's proposed protective order language is appropriate, but that other proposed language is not, it grants in part and denies in part Homesite's motion for a protective order and will require the parties to file a stipulated protective order with the language the Court provides. (ECF No. 69). Because the Court finds that Plaintiffs are attempting to conduct an improper apex deposition and that a subpoena was improper in this matter, the Court grants the motion to quash and motion for protective order. (ECF Nos. 80, 81).

## I. Background.

### A. Homesite's motion to amend its complaint.

On March 2, 2023, Homesite moved to amend its complaint to add DKM as a party. (ECF No. 68). It asserts that the Norcold Defendants would not stipulate to adding DKM because the statute of limitations had run but that it could not add DKM sooner because it has been unable to obtain information through discovery about DKM's role in creating the refrigerator. Homesite alleges that, based on information and belief, DKM played a role in manufacturing or designing the refrigerator at issue. Homesite adds that the amendment relates back to the original complaint because it arises out of the same occurrence. It also argues that DKM has notice of the lawsuit because it is a party in the other, consolidated action and its attorneys are the same.

The Norcold Defendants respond that Homesite's proposed amendment would be futile because Homesite cannot satisfy the relation back requirements under either federal or Nevada

law. (ECF No. 73). They assert that Homesite cannot show that either by February 3, 2022 (under the federal standard) or March 7, 2022 (under the Nevada standard) DKM received notice that it would be sued by Homesite and that DKM knew or should have known that but for a mistake concerning its identity, it would have been sued by Homesite. The Norcold Defendants argue that DKM is merely a holding company and was not involved in the design or manufacture of the refrigerator. They also argue that Homesite failed to satisfy the Doe pleading requirements of Nevada Rule of Civil Procedure 10 and failed to be diligent in moving to amend its complaint.

Homesite replies that its claims against DKM do relate back under either federal or Nevada law. (ECF No. 76). It argues that DKM had notice of the suit by virtue of being involved in the consolidated action. Regarding the mistake-in-identity prong, Homesite points out that because the parties have been unable to agree on a protective order in this case, discovery has stalled and Homesite was unable to determine DKM's role in the events giving rise to Homesite's case more promptly. Homesite adds that it does not seek to add DKM as a Doe under NRCP 10 and thus those standards do not apply to it.

### B. *Plaintiffs' joint motion for protective order.*

Plaintiffs Homesite, the Marxes, and the Dillards jointly move for a protective order, asserting that, despite attempting to work together with Defendants to come up with a protective order to govern the parties' exchange of information, the parties have been unable to agree on the terms of that order. (ECF No. 69). Plaintiffs attach a proposed protective order. (*Id.* at 17-33). Norcold, Thetford, and DKM oppose Plaintiffs' motion, which opposition the Camping World Defendants join (collectively, "Defendants"). (ECF Nos. 78, 79). Defendants propose a protective order similar to one to which they are bound in a different case in the Eastern District of North Carolina—*Leslie Cohen et al. v. Norcold, Inc. et al.*, Case No. 5:20-cv-00170-BO— because it would be easier for Defendants to comply with the terms of one protective order, rather than attempting to comply with conflicting protective orders. Alternatively, Defendants propose changes to the protective order suggested by Plaintiffs.

Plaintiffs reply that their protective order is based on a protective order to which Defendants stipulated in another action in the Ninth Circuit and is based on the Model Protective

Order for the Northern District of California.  (ECF No. 84).  Additionally, Plaintiffs point out that the parties worked for months meeting and conferring on their proposed protective order and that Defendants' attempt to instead use the *Cohen* order would jettison the entire endeavor.  Plaintiffs assert that the Court should grant the provisions of the protective order on which the parties have come to agree and decide the disputed provisions.

### C. *The Norcold Defendants' motion to quash and for protective order.*

Plaintiffs issued a notice of intent to serve a subpoena seeking to depose the Chairman/President and Director of Norcold and Thetford: Justin Hillenbrand.  That subpoena listed two topics for deposition: (1) the conversion of Norcold and Thetford from corporations to limited liability companies; and (2) the Dyson-Kissner-Moran Corporation's sale of Thetford and Norcold to Monomoy Capital Partners in 2021.  The Norcold Defendants move for a protective order or to quash Plaintiffs' subpoena to Mr. Hillenbrand.  (ECF Nos. 80, 81).  Defendants point out in support of their motion to quash that, although Mr. Hillenbrand is not a named party, because he is the Chairman/President and Director of Norcold and Thetford—named defendants—that the subpoena was unnecessary.  In arguing that the Court should issue a protective order, the Norcold Defendants point out that Mr. Hillenbrand is an apex deponent and other, lower-level employees of Norcold and Thetford are knowledgeable of the topics in the subpoena to Mr. Hillenbrand, thus deposing Mr. Hillenbrand would be improper under the apex doctrine.  Indeed, Plaintiffs included identical topics in their 30(b)(6) notices.  The Norcold Defendants add that the topics are neither relevant nor proportional because the sale of Norcold and Thetford have no bearing on the instant products liability issue and does not affect jurisdiction in this matter.

Plaintiffs respond that the apex doctrine does not operate to protect Mr. Hillenbrand from deposition because he was involved in DKM's sale of Norcold and Thetford to non-party Monomoy Capital Partners and the conversion of both Norcold and Thetford to limited liability companies.  (ECF No. 89).  They add that, because the sale occurred after the lawsuit was filed but before the Norcold Defendants removed the action to federal Court, Plaintiffs need to question Mr. Hillenbrand about the corporate reorganization and what that means for jurisdiction.

Specifically, Plaintiffs assert that they need to determine the citizenship of all partners of Monomoy Capital Partners two levels down to determine whether jurisdiction is appropriate because partnerships are citizens of every state of which its members are citizens. Plaintiffs also assert that the relationship between DKM, Thetford, and Norcold is relevant to whether DKM is liable for the defective refrigerator, or whether Norcold and Thetford, or any other successor companies, are liable.

The Norcold Defendants reply regarding Plaintiffs' argument that they need to understand the corporate reorganization of the Norcold Defendants for jurisdiction purposes, that Norcold is an LLC which is solely owned by Thetford and Thetford is an LLC that is solely owned by Yosemite Acquisition Company, a non-party to this action.[3] (ECF No. 90). Thus, the citizenship of Monomoy Capital Partners has no bearing on the case. The Norcold Defendants also point out that Mr. Hillenbrand's knowledge of the sale and reorganization of the companies is not unique and that Plaintiffs can determine the information they seek from the Rule 30(b)(6) depositions they have noticed.

**II.     Discussion.**

   *A.     Homesite's motion to amend.*

Generally, a party may amend its pleading once "as a matter of course" within twenty-one days of serving it, or within twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. "The court considers five factors [under Rule 15] in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011).

---

[3] The Norcold Defendants explain that Yosemite Acquisition Corporation is a Delaware Corporation with its principal place of business in Michigan and thus its citizenship does not impact jurisdiction in this case. (ECF No. 81 at 14). It is unclear from the briefings what the relationship is between Yosemite and Monomoy.

Not all of these factors carry equal weight and prejudice is the "touchstone." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Absent a showing of prejudice or a strong showing of any of the remaining factors, there is a presumption that leave to amend should be granted. *Id.* "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits, rather than on the pleadings or technicalities." *Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). Generally, the analysis "should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

"Denial of leave to amend on this ground [futility] is rare. Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003). "Deferring ruling on the sufficiency of the allegations is preferred in light of the more liberal standards applicable to motions to amend and the fact that the parties' arguments are better developed through a motion to dismiss or motion for summary judgment." *Steward v. CMRE Fin. Servs., Inc.*, No. 2:15-cv-00408-JAD-NJK, 2015 WL 6123202, at *2 (D. Nev. Oct. 16, 2015). The party opposing the amendment bears the burden of showing why leave should be denied, *Desert Protective Council v. U.S. Dept. of the Interior*, 927 F. Supp. 2d 949, 962 (S.D. Cal. 2013) (citing *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989)), including the burden of establishing prejudice, *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

Leave to amend should be denied as futile "only if no set of facts can be proven under the amendment to the pleadings that would constitute a valid and sufficient claim." *Barahona v. Union Pac. R.R.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997)). A plaintiff is not required to produce evidence supporting the amended complaint at the pleading stage; rather an amended complaint must plead facts sufficient to plausibly state a claim. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citation omitted) (stating

that standard for considering whether amendment would be futile is the same standard used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)). "The test to be applied to determine legal sufficiency (i.e., futility) of a proposed amendment is the same standard used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Seneca Insurance Company, Inc. v. Alpine Insurance Associates, Inc.*, No. 3:18-cv-00087-MMD-WGC, 2021 WL 2637322, at *2 (D. Nev. June 25, 2021) (internal citations and quotations omitted). A proposed amendment would not be considered futile if questions of fact need to be resolved in determining whether an actionable claim exists. *Id.*

Here, the Court grants Homesite's motion to amend. DKM argues that Homesite's amendment would be futile because the statute of limitations has run, Homesite cannot demonstrate relation back, and because DKM was not involved in designing the refrigerator at issue in this case. However, each of these arguments is more properly made through a motion to dismiss. Homesite has argued that its claims against DKM relate back because the claim against DKM arises out of the same conduct set forth in the original complaint, DKM had notice of the original action, and because DKM should have known that, but for delays in exchanging discovery that reveal its involvement, Homesite would have named it in the complaint. Whether Homesite will be successful on these arguments remains to be seen. But given Homesite's arguments, the Court cannot find that it could prove no set of facts under the amendment that would constitute a valid and sufficient claim. Considering the underlying purpose of Rule 15—to facilitate decision on the merits, rather than on the pleadings or technicalities—the Court grants the motion to amend.

### B.     *Plaintiffs' joint motion for protective order.*

Because the parties have already met and conferred and agreed to numerous terms, the Court declines to enter Defendants' proposed protective order, which would abandon the terms to which the parties have agreed. Instead, the Court will consider each of the parties' arguments regarding the provisions of the protective order on which they disagree and will require the parties to file a stipulated protective order in accordance with the Court's decisions on each.

1. <u>Paragraph 1 – Purposes and Limitations.</u>

Plaintiffs assert that the protective order should govern only pretrial disclosure and discovery, but not the trial. Defendants assert that the protective order should also cover the trial, particularly because Defendants will be producing sensitive information related to the design, development, and testing of the refrigerator. Defendants have the better argument. The Court will thus require that the parties' stipulated protective order apply to this case in its entirety.

2. <u>Paragraph 2.6 – Definition of "Expert."</u>

Plaintiffs assert that expert should be defined as a person "with specialized knowledge or experience in a matter pertinent to the litigation." Defendants assert that this definition presumes without proof that anyone that Plaintiffs retain as an expert has specialized knowledge or experience without Plaintiffs bearing the burden of affirmatively proving that the individual is qualified as an expert. Alternatively, Defendants assert that the defined term should be removed entirely because it is unnecessary. The Court agrees that it is unnecessary to define the term expert for the purposes of a protective order. As Plaintiffs point out, that an expert is a party who may view confidential information under a protective order does not create the presumption that the individual is qualified as an expert to testify or satisfy the burden of establishing the relevant and admissibility of that testimony. The parties should eliminate this defined term from their stipulated protective order.

3. <u>Paragraph 3 – Scope of Protective Order.</u>

Plaintiffs assert that the Defendants want the scope of the protective order to be too broad, presuming all discovery material to be confidential until proven otherwise. Plaintiffs assert that Defendants' request that confidential documents include those published openly to the public on PACER, more than five years old, and otherwise already known to Plaintiffs is overbroad. Defendants assert that Plaintiffs' proposed language would not adequately protect confidential material because it would exclude from protection any information that is more than five years old and information used at any court hearing or proceeding. Defendants assert that the danger of excluding information already known to Plaintiffs from being confidential is that Plaintiffs' counsel has filed numerous lawsuits against Norcold and thus already has significant confidential

information within his control.  Having considered the parties' arguments, the Court will require the scope of protections conferred by the protective order to remain the same.  However, the Court will amend the exceptions to that scope as follows, removing the exclusions for information "widely disseminated," more than five years old, and information that may be presented at any court hearing or proceeding:

> However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information lawfully acquired by or known to the Receiving Party from a source independent of the Designating Party and which source obtained the information lawfully and under no obligation of confidentiality to the Designating Party.

The Court also modifies the sentence stating that "[a]ccordingly, any use of Protected Material at trial shall be governed by a separate agreement or order" to state "any use of Protected Material at trial may be governed by a separate agreement or order."  The parties' stipulated protective order must include the language above in lieu of the disputed language.

          4.      <u>Paragraph 4 – Duration.</u>

Plaintiffs argue that the protective order should be subject to future modification by the Court, which is standard procedure for protective orders.  Defendants argue that the protective order should remain in place without being subject to potential modification.  Defendants assert that allowing Plaintiffs to later modify the protective order will give them two bites at the apple to argue that information is not confidential or entitled to protection under the protective order. Plaintiffs have the better argument.  Defendants' concern that Plaintiffs will later attempt to modify the protective order to re-argue confidentiality designations can be addressed by Defendants in their briefing should Plaintiffs seek to modify the protective order.  If the Court were to prohibit any modifications to the protective order on the grounds that Plaintiffs might seek to amend it improperly, the protective order would function as an improper advisory

opinion. The language proposed in Plaintiffs' protective order shall govern and the parties must include that language in their stipulated protective order. (ECF No. 69 at 20, ¶ 4).

       5.     <u>Paragraph 5.1 – Designating Protected Material.</u>

Plaintiffs argue that this paragraph's requirement that parties must "take care to limit any [confidentiality] designation to specific material that qualifies under the appropriate standards" and prohibiting "[m]ass, indiscriminate, or routinized designations" is necessary because Defendants have a history of "designating every scrap of paper 'Confidential.'" Defendants respond that they have no qualms with exercising restraint and have even included similar language in their own proposed protective order. Defendants assert that Plaintiff's proposed language includes improper language regarding the potential imposition of sanctions on a designating party in an attempt to set a sanctions trap.

Because the parties essentially agree that the protective order should prohibit over-designation and require the parties to exercise care, the Court will require the stipulated protective order to contain Defendant's proposed language—included below—which succinctly describes this agreement. The Court will require the stipulated protective order to remove reference to sanctions. If one party believes that the Court should sanction another party for their designations, they may make their arguments regarding those sanctions in the appropriate motion.

> Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to material that qualifies for protection under the appropriate standards. To the extent it is practicable to do so, the Designating Party must designate for protection only those parts of discovery that qualify so that other portions of the discovery for which protection is not warranted are not swept unjustifiably within the ambit of this Order. Indiscriminate designations are prohibited.

       6.     <u>Paragraph 5.2 – Manner and Timing of Designations for Testimony.</u>

Plaintiffs argue that their proposed designation process requires the Designating Party to make their designations during a deposition, which provides an opposing party notice at a point where they can still redirect their questioning to avoid a confidentiality designation. Their language would also place a twenty-day limit on retroactive confidentiality designations, requires

that the designations be limited, and requires that the designated portions of a deposition be separately bound. Plaintiffs assert that Defendant's proposal of a thirty-day window to make retroactive designations is unreasonable. Defendants respond that the thirty-day language would afford Defendants and all other parties sufficient time to actually receive a deposition or hearing transcript, analyze it, and determine what, if anything, should be confidential.

The Court does not agree that thirty days, as opposed to twenty, is unreasonable. Instead, thirty days ensures that all parties receive the information and have sufficient time to designate it. The Court will thus require that the parties' stipulated protective order contain Defendants' proposed language, with amendments by the Court as outlined below:

> **(b) for testimony given in deposition or in other pretrial or trial proceedings,** that the Designating Party identify either on the record, before the close of the deposition, hearing, or other proceeding or within thirty (30) days after the deposition, hearing, or other pretrial proceeding, all protected testimony. Until expiration of the referenced 30-day period, the entire transcript of the testimony shall be treated as confidential and subject to protection against disclosure under this Order. Only those portions of the testimony that are appropriately designated for protection within the 30-day period shall be covered shall be covered by the provisions of this Order.

       7.     <u>Paragraph 5.3 – Inadvertent Failures to Designate.</u>

Plaintiffs argue that the timeframe for designating documents inadvertently produced without designations should be thirty days from the time of production. Defendants argue that there should be no timeframe imposed on a producing party to notify the receiving party of an inadvertent failure to designate information or material as confidential. In the event the Court finds a timeframe appropriate, Defendants suggest that the deadline should be thirty days after production or within seven days of the producing party learning of the inadvertent failure to designate. Defendants also assert that the protective order should set forth clear guidelines on what a party must do when notified that it has received confidential information inadvertently. Defendants propose that "upon receiving notice of an inadvertent failure to designate confidential information, the receiving party should be required to immediately retrieve and destroy all unmarked material and substitute therefore appropriately marked material, and the receiving party

shall not thereafter disclose or use any such unmarked material or any information contained therein." Defendants add that the protective order should include language that a party's inadvertent failure to designate confidential information does not waive the party's right to secure protection of the information under the protective order.

Defendants have the better argument. To the extent that a party believes that another party had actual notice of an inadvertently produced document and nonetheless waited to make that designation, that party may make the appropriate motion. The parties must include Defendants' proposed language in their stipulated protective order.

        8.    <u>Paragraph 6.3 – Challenging Confidentiality Provisions.</u>

Plaintiffs assert that the parties' dispute over the provisions of this paragraph involve which party bears the burden of a confidentiality designation. Plaintiffs argue that the designating party should be the one to support the designation by filing a motion to maintain the designation. Defendants assert that the party seeking to remove the designation should be the one to file a motion and ask the Court to remove the designation. The Court disagrees with the parties that the protective order should dictate which party can file a motion over this issue. If a party seeks relief from the Court, they may file the appropriate motion. The Court will thus require the parties to replace paragraph 6.3 with the below language:

> In the event that the parties are unable to resolve their disputes in the meet-and-confer process, either party may file an appropriate motion with the Court challenging or defending the confidentiality designation. Any motion must be accompanied by a declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. The burden is on the party designating the document confidential to support its claim of confidentiality. The parties shall treat the documents as confidential until the Court rules otherwise.

        9.    <u>Paragraph 7.1 – Access to and Use of Protected Material.</u>

The parties disagree over whether this section should include language stating that "[a] Receiving Party's failure to comply with this Paragraph 7 shall subject the Receiving Party to sanctions." Plaintiffs assert that Defendants are trying to include the language as a sanctions trap. Defendants assert that the language is necessary because Plaintiffs' counsel has a history of

disclosing opposing party's confidential information in violation of protective orders. The Court finds the sanction language unnecessary. If a party believes another party has violated the protective order and that sanctions are warranted, they may bring the appropriate motion. The parties should omit this language from their stipulated protective order.

          10.      <u>Paragraph 10 – Unauthorized Disclosure of Protected Material.</u>

Plaintiffs argue that Defendants are attempting to set impossible standards for Plaintiffs to follow by "imposing further burdens on the party who has made an unauthorized disclosure to ensure that the person receiving the protected material does not use it or further disclose it, and that the party who has made an unauthorized disclosure require that the person in receipt of such material execute the Agreement to be Bound." Defendants assert that the proposed language is reasonable. The Court finds a middle ground to be appropriate here and will require the parties to include the below language in their stipulated protective order:

> If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) notify in writing the party to whom the disclosure was made of the unauthorized disclosure, (c) use its best efforts to retrieve all unauthorized copies of the Protected Material as well as request that the party to whom disclosure was made does not further use and/or disclose such Protected Material, (d) inform the person or persons to whom unauthorized disclosures were made of all terms of this order, and (e) request that such person or persons execute the "Acknowledgement and Agreement to Be Bound" that is attached hereto as Exhibit A.

          11.      <u>Paragraph 11 – Inadvertent Production of Privileged or Otherwise Protected Material.</u>

Plaintiffs argue that this section should include a time limit such that a party who inadvertently discloses protected material would only have thirty days after production to designate the information confidential and claw it back. Plaintiffs assert that this would prevent the gamesmanship of a party "waiting for the Receiving Party to attempt to use the material, only to claim that the material was 'inadvertently produced'…" Defendants respond that Plaintiffs'

proposed timeline is not supported by Federal Rule of Civil Procedure 26(b)(5)(B), which provides for reclaiming inadvertently disclosed information without any timeline. Defendants add that Plaintiffs' argument that Defendants will engage in gamesmanship is not supported.

Defendants have the better argument. Plaintiffs proposed language assumes that other parties may engage in gamesmanship and attempts to use the protective order to prevent all instances of wrongdoing. But the more appropriate way to deal with gamesmanship and bad faith litigation tactics is to bring the appropriate motion if and when they occur, not to attempt to preempt them with a protective order. The Court will thus require the parties' stipulated protective order to include Defendants' proposed language.

12. <u>Paragraph 12.3 – Filing Protected Material.</u>

The parties disagree over language governing how parties should file confidential documents and what happens if the Court denies a motion to seal. However, the Nevada Local Rules and the Ninth Circuit have already established this process. The Court will thus require that the parties stipulated protective order contain the below language:

> A party seeking to file a confidential document under seal must file a motion to seal and must comply with the Ninth Circuit's directives in *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) and *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016). Attorneys must file documents under seal using the Court's electronic filing procedures. *See* Local Rule IA 10-5. Papers filed with the Court under seal must be accompanied with a concurrently-filed motion for leave to file those documents under seal. *See* Local Rule IA 10-5(a).
>
> The Court has approved the instant protective order to facilitate discovery exchanges, but there has been no showing, and the Court has not found, that any specific documents are secret or confidential. The parties have not provided specific facts supported by declarations or concrete examples to establish that a protective order is required to protect any specific trade secret or other confidential information pursuant to Rule 26(c) or that disclosure would cause an identifiable and significant harm. The fact that the Court has entered the instant stipulated protective order and that a party has designated a document as confidential pursuant to that protective order does not, standing alone, establish sufficient grounds to seal a filed document. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1133 (9th Cir. 2003); *see also Beckman Indus., Inc. v.*

> *Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).  If the sole ground for a motion to seal is that the opposing party (or non-party) has designated a document as confidential, the designator shall file (within seven days of the filing of the motion to seal) either (1) a declaration establishing sufficient justification for sealing each document at issue or (2) a notice of withdrawal of the designation(s) and consent to unsealing.  If neither filing is made, the Court may order the document(s) unsealed without further notice.

### C. *The Norcold Defendants' motion to quash and for protective order.*

Rule 45 governs the issuance of subpoenas requiring non-parties to produce designated documents.  *See* Fed. R. Civ. P. 45(a)(1)(A)(iii); *see Millenium Drilling Co., Inc. v. Beverly House-Meyers Revocable Trust*, No. 2:12-cv-00462-MMD-CWH, 2015 WL 13940564, at *1 (D. Nev. Jan. 8, 2015) ("A Rule 45 subpoena is required to obtain testimony or documents from one who is not a party to the action or controlled by a party to the action.").  A court must grant a timely motion to quash or modify a subpoena that fails to allow reasonable time to comply, requires a person to comply beyond the geographical limits specified in Rule 45(c), requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to undue burden.  *See* Fed. R. Civ. P. 45(d)(3)(A).  The movant seeking to quash a subpoena bears the burden of persuasion.  *Green v. Baca*, 226 F.R.D. 624, 653 (C. D. Cal. 2005).

"Rule 26(c) permits courts to issue a protective order upon a showing of good cause to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Torres v. Rothstein*, No. 2:19-cv-00594-APG-EJY, 2020 WL 3808899, at *5 (D. Nev. July 6, 2020).  This "burden is upon the party seeking the order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Wells Fargo Bank, N.A. v. Iny*, No. 2:13-cv-01561-MMD-NJK, 2014 WL 1796216, at *3 (D. Nev. May 6, 2014) (internal citation and quotation marks omitted).  The moving party can satisfy its burden by showing that the discovery requested is irrelevant, overly broad, burdensome, or oppressive. *Heyman v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, No. 2:15-cv-01228-RFB-GWF, 2018 WL 10323384, at *1 (D. Nev. Apr. 20, 2018).

"When a party seeks the deposition of a high-level executive (a so-called 'apex' deposition), courts have 'observed that such discovery creates a tremendous potential for abuse or

harassment.'" *Jensen v. BNSF Rwy. Co.*, No. 3:13-cv-05955-HSG (LB), 2015 WL 3662593, at *2 (N.D. Cal. May 19, 2015) (quoting *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 262–63 (N.D. Cal. 2012)). "The court therefore has discretion to limit discovery where the discovery sought 'can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *Id.* (quoting *Apple*, 282 F.R.D. at 263). "'In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods.'" *Id.* at *3 (quoting *Apple*, 282 F.R.D. at 263). "'A party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied.'" *Id.* (quoting *Apple*, 282 F.R.D. at 263). "Thus, it is very unusual 'for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances.'" *Id.* (quoting *Apple*, 282 F.R.D. at 263). "'When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition.'" *Id.* (quoting *Apple*, 282 F.R.D. at 263). "'A claimed lack of knowledge, by itself it is insufficient to preclude a deposition.'" *Id.* (quoting *Apple*, 282 F.R.D. at 263).

Here, the Court grants the Norcold Defendants' motion to quash and for a protective order. Regarding the motion to quash, although Plaintiffs assert that their subpoena was proper because Mr. Hillenbrand is not a named party, he is the Chairman/President and Director of two named parties. As a result, a subpoena was unnecessary to depose him. The Court thus grants the motion to quash.

The Court also grants the motion for protective order. The Norcold Defendants have persuasively argued that, although Mr. Hillenbrand has knowledge of the topics Plaintiffs seek to depose him about, he does not have unique knowledge. And Plaintiffs have noticed Rule 30(b)(6) depositions of both Norcold and Thetford in which they seek the same information that they do in Mr. Hillenbrand's deposition. The Court thus finds that the Plaintiffs have not exhausted other less intrusive discovery means. Additionally, the Norcold Defendants have persuasively argued that Mr. Hillenbrand's deposition will be oppressive and expensive because it will be repetitive of the 30(b)(6) depositions and thus repetitive of attorney time and will take Mr. Hillenbrand away

from his duties directing the companies. Because the Court finds that a protective order is proper on the grounds that Mr. Hillenbrand is an apex witness, it does not reach the issue of whether the topics are relevant or proportional.

**IT IS THEREFORE ORDERED** that Homesite's motion to amend its complaint (ECF No. 68) is **granted.**

**IT IS FURTHER ORDERED** that Homesite's joint motion for a protective order (ECF No. 69) is **granted in part and denied in part.**

**IT IS FURTHER ORDERED** that the parties are directed to file a stipulated protective order including the terms the Court has discussed herein and the terms to which the parties have already agreed on or before **July 14, 2023**.

**IT IS FURTHER ORDERED** that the Norcold Defendants' motion to quash and motion for protective order (ECF Nos. 80, 81) are **granted.**

DATED: June 15, 2023

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE